THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| VELMA JUANITA HOWELL, individually, and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>    v.<br><br>SMARTMATCH INSURANCE AGENCY, LLC,<br><br>    *Defendant.* | Case No. 4:23-cv-00040<br><br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Velma Juanita Howell ("Ms. Howell" or "Plaintiff"), through her counsel, and on behalf of herself and all others similarly situated, files her Class Action Complaint against Defendant SmartMatch Insurance Agency, LLC ("SmartMatch" or "Defendant"), and states:

**INTRODUCTION AND NATURE OF THE CASE**

1. Plaintiff's Class Action Complaint is brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*.

2. In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing phone calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3. The TCPA affords special protections for people who register their cell phone numbers on the National Do Not Call Registry. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after being registered on the National Do Not

1

Call Registry is entitled to recover a penalty of $500 per call, and potentially $1,500 per call if the calling party is determined to have willfully violated the TCPA. *See* 47 U.S.C. § 227(c) *et seq.*

4. The problem with receiving unwanted telemarketing calls is a problem that most people in this country, like Ms. Powell, frequently face. For example, in 2022 alone, approximately 36.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited January 18, 2023). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

5. SmartMatch engaged in improper and deceptive telemarketing practices by placing improper and unwanted telemarketing calls to Plaintiff and the putative class members, whose numbers were registered on the National Do-Not-Call Registry.

6. More specifically, SmartMatch purportedly obtained Ms. Howell and the putative class members' phone numbers through the ruse of an employment website, "simplyjobs.com", where Plaintiff and others purportedly entered their personal data in furtherance of finding employment. Rather than providing information about job openings, SmartMatch instead inundated consumers with telemarketing calls for the purpose of selling insurance policies.

7. Moreover, SmartMatch's purported consent was invalid as SmartMatch was not a party to any purported consent to place calls to Ms. Howell and the putative class members.

8. Using deceptive methods to obtain consumer data is the diametric opposite of the "clear and conspicuous" disclosure telemarketers are prescribed by the FCC to provide to consumers in order to obtain express written consent.[1] Accordingly, SmartMatch cannot prevail on its affirmative defense of consent for the telemarketing calls made to Ms. Howell and other persons whose phone numbers were registered on the Do-Not-Call registry.

**PARTIES**

9. Plaintiff Velma Juanita Howell is a citizen and resident of the State of Florida.

10. Defendant SmartMatch Insurance Agency, LLC d/b/a SmartMatch Assistant ("SmartMatch") is a Missouri corporation with its headquarters located at 120 W. 12th Street, Suite 1700, Kansas City, Missouri 64105.

11. As of the date of this Complaint, SmartMatch has not registered any fictitious name under which it transacts business with the Missouri Secretary of State, including, but not limited to the name "Medicare Rewards."

12. SmartMatch's website does not represent that SmartMatch transacts business by any name other than SmartMatch. The website does not reference any other business name, including, but not limited to the name "Medicare Rewards."

13. SmartMatch is a telemarketer that sells *inter alia,* Medicare insurance plans.

14. SmartMatch's website represents that SmartMatch "helps offer adults a clear view of their insurance options."

15. According to SmartMatch's filings with the Missouri Secretary of State website, SmartMatch's business purpose is the "distribution of senior insurance products."

---

[1] 47 C.F.R. § 64.1200(f)(9)(i).

## JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

17. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

18. SmartMatch maintains its headquarters and regularly does business in the State of Missouri.

19. Accordingly, this Court has general jurisdiction over SmartMatch and specific jurisdiction over all parties due to the acts and omissions described herein.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and 1391(b)(2).

### SmartMatch's Telemarketing Campaign Toward Howell

21. At all times relevant to this Complaint, Ms. Howell owned a cell phone, the number for which was 863-XXX-0925.

22. Ms. Howell used that cell phone primarily for residential purposes, including, but not limited to, speaking with friends and family members.

23. Ms. Howell's cell phone is not a business line, and the account is held in her individual name.

24. Ms. Howell registered her cell phone number on the National Do-Not-Call Registry on or about May 21, 2009, in order to obtain solitude from unwanted and invasive telemarketing calls.

4

25. At all times relevant to this Complaint, Ms. Howell had a satisfactory Medicare healthcare plan and was not in the market for health insurance.

26. Despite the fact Ms. Howell was not in the market for health insurance and would not have agreed to receive calls for the purpose of soliciting health insurance, SmartMatch, a telemarketer in the business of selling Medicare insurance plans, claims it obtained Ms. Howell's ostensible consent to place solicitation calls to her number.

27. Digital Media Solutions, the lead generator and data-broker that owns and operates the "Simply Jobs" website, claims it obtained Ms. Howell's purported consent for SmartMatch to call Ms. Powell from the "Simply Jobs" website in or around June of 2021.

28. Ms. Howell was searching for a job in the summer of 2021 and completed several applications and forms online in connection with her job search.

29. Upon information and belief, data-brokers and lead-generators like Digital Media Solutions, regularly sell consumer data to telemarketers after deceptively obtaining that data under the guise or pretense of offering employment opportunities.

30. Despite the fact that Ms. Howell did not seek to obtain health insurance, was not in the market for health insurance, and did not consent to receive telemarketing calls about health insurance, in the fall of 2021, SmartMatch placed at least four telemarketing calls to Ms. Howell for the purpose of selling her a Medicare insurance plan.

31. Those calls were made by SmartMatch to Howell on at least four occasions, including, but not limited to, the following:

| Date | Time | Phone Number Appearing On Howell's Caller ID |
|---|---|---|
| October 5, 2021 | 4:36 pm EST | (816) 872-2689 |

| October 7, 2021  | 3:45 pm EST | (813) 946-6810 |
| October 11, 2021 | 1:20 pm EST | (813) 946-6810 |
| October 21, 2021 | 4:10 pm EST | (863) 238-5058 |

32. Each of the calls placed to Ms. Howell were made for the purpose of soliciting the sale of SmartMatch's insurance products or services, which is not an "emergency purpose" or the conveyance of critical healthcare information. Rather, each of the calls were for telemarketing purposes, namely, to sell an insurance product or service.

33. On information and belief, the representative on each of the calls placed to Ms. Howell advised that they were a SmartMatch representative.

34. When Ms. Howell answered each call, a pre-recorded message would play before being transferred to a live agent.

35. Ms. Howell's number was registered on the National Do-Not-Call Registry for 30 or more days before SmartMatch made each the subject calls.

36. Ms. Howell found the calls to be invasive, irritating, distracting and an intrusion on her privacy.

**SmartMatch Cannot Establish its Affirmative Defense of Express Written Consent or an Established Business Relationship**

37. As discussed within, the telemarketing calls placed to Ms. Howell violated the TCPA.

38. Digital Media Solutions, the lead-generator and data-broker that owns and operates the "Simply Jobs" website, claims it procured Ms. Howell's express written consent for SmartMatch to contact her on her cell phone.

6

39. Under the TCPA, the absence of consent is not part of the plaintiff's claim, rather it is the defendant's burden to prove its affirmative defense that it had the consumer's "express written consent."[2]

40. For a telemarketer to meet its burden of establishing it had express written consent to call a party, the defendant must present a written agreement with the called party, which contains a clear and conspicuous disclosure informing the called party that by executing the agreement he or she is agreeing to "authorize the seller to deliver or cause to be delivered" telemarketing calls to their phone.[3]

41. The FCC has long made clear the placement of the burden for consent:

> Should any question about the consent arise, the seller will bear the burden of demonstrating that a **clear and conspicuous disclosure was provided and that unambiguous consent was obtained.**

*See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd 1830 at ¶26, 32, 33 (Feb. 12, 2012) (emphasis added).

42. 47 C.F.R. § 64.1200(f)(3) provides in relevant part: "The term clear and conspicuous means a notice that would be apparent to ***the reasonable consumer***, separate and distinguishable from the advertising copy or other disclosures." (Emphasis added).

43. Accordingly, the test for whether a disclosure is "clear and conspicuous," turns not on a consumer's subjective perception about the disclosure, but on an objective inquiry to be undertaken from the perspective of the reasonable consumer.

---

[2] *See generally In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (F.C.C. December 28, 2007) ("express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof.")

[3] 47 C.F.R. § 64.1200(f)(9)(i).

7

44. The purported "disclosure" used by Simply Jobs, a website through which people could search for jobs, was not clear or conspicuous that using the website would allow people to be contacted not about jobs, but about purchasing health insurance products and services. Rather, the "disclosure" was deliberately deceptive.

45. The "Simply Jobs" website was designed to present as an employment website that helps people find jobs, where it is actually a telemarketing lead-generation website designed to trick consumers into providing "consent" when the consumers reasonably believe they will be receiving job opportunities.

46. The purported "opt-in" obtained by SmartMatch is deliberately deceptive and fundamentally at odds with the requirements of the TCPA and the FCC that govern consent.

47. The "terms and conditions" hyperlink leads to a separate website with the "consent" language. It is not clear and conspicuous on the "Simply Jobs" website that a consumer ostensibly signing up to receive notices of job opportunities, is actually agreeing to the terms and conditions set forth on a separate website.

48. Moreover, the "Simply Jobs" website contains a list of "marketing partners" to whom the purported TCPA consent applies. This list of marketing partners, however, does not identify SmartMatch.

49. In other words, even if the disclosure was "clear and conspicuous," no such consent was obtained from Ms. Howell or the putative class members as SmartMatch was not identified as a "marketing party" and therefore cannot be a party to any purported consent.

50. In addition to not being able to establish the affirmative defense of express written consent, SmartMatch also cannot establish the affirmative defense of "existing business relationship."

51. Ultimately, Ms. Howell meets the elements of her affirmative claim because she received telemarketing calls from SmartMatch while her phone number had been registered on the National Do-Not-Call Registry for more than 30 days. However, because the purported "opt-in" is not a valid form of consent or an "established business relationship", SmartMatch cannot meet its burden of proof for either affirmative defense.

## Class Allegations

52. Pursuant to Federal Rule of Civil Procedure 23, Ms. Howell brings this case on behalf of herself and all others similarly situated. This action satisfies the requirements of Rule 23 to certify and maintain this case as a class action.

53. Ms. Howell seeks to represent the following class:

**DNC Class:**

> For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States:
>
> (1) whose phone number was purportedly submitted through the "Simply Jobs" website;
>
> (2) who received more than one telephone call on behalf of SmartMatch (or someone acting on its behalf) during a 12-month period;
>
> (3) whose phone number was registered on the Do Not Call Registry for more than 31 days at the time the calls were received; and
>
> (4) whose phone number was either a landline or a cell phone, for which the subscriber was an individual and not a business.

54. The members of the proposed class are so numerous that joinder of all members is impracticable. Ms. Howell reasonably believes that hundreds or thousands of people have been harmed by SmartMatch's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to SmartMatch.

55. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

9

56. On information and belief, SmartMatch has called and continues to call people who are registered on the National Do-Not-Call Registry. It is reasonable to expect that SmartMatch will continue to make such calls absent this lawsuit.

57. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to, whether SmartMatch called phone numbers that were registered on the National Do-Not-Call Registry and whether such calls violate the TCPA.

58. Ms. Howell's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

59. Ms. Howell and her counsel will fairly and adequately protect the interests of the members of the proposed class. Howell's interests do not conflict with the interests of the proposed class. Ms. Howell has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

60. A class action is superior to individual lawsuits for the resolution of this controversy. Joinder of all proposed members of the proposed class in one action is impracticable, if not impossible, and prosecuting hundreds or thousands of individual actions is not feasible. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

61. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

62. Questions of law and fact, particularly the propriety of calling cell phone numbers registered on the National Do-Not-Call Registry without obtaining valid consent, predominate over questions affecting only individual members.

63. SmartMatch has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## COUNT I
## SMARTMATCH VIOLATED SECTION 227(c)(5) OF THE TCPA

64. Plaintiff incorporates the allegations in the previous paragraphs as if fully set forth in this Count.

65. Section 227(c)(5) of the TCPA and its accompanying regulation, 47 C.F.R. § 64.1200(c)(2), prohibit telemarketing calls to residential telephone subscribers who have registered their phone numbers on the Federal Trade Commission's Do-Not-Call Registry.

66. Since 2003, calls to mobile phone numbers registered on the Do-Not-Call Registry have been considered to be calls to a "residential telephone" for the purpose of 227(c)(5) claim. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

67. 47 C.F.R. § 64.1200 (f) provides in relevant part:

(9) The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or

11

telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

> (i) The written agreement shall include a **clear and conspicuous disclosure** informing the person signing that:
>
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly) or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

(emphasis added).

68. Likewise, 47 C.F.R. §. 64.1200(f)(3) provides in relevant part, "The term clear and conspicuous means a notice that would be apparent to the reasonable consumer, separate and distinguishable from the advertising copy or other disclosures."

69. Moreover, the purported consent SmartMatch claims to have obtained is invalid as it was not a party to any such purported consent agreement.

70. SmartMatch called Ms. Howell and the putative class members for solicitation purposes, namely, to sell insurance products and services, despite the fact that their numbers were registered on the National Do-Not-Call Registry for over 30 days. SmartMatch placed two or more calls to Ms. Howell and the putative class members after their numbers were registered on the National Do-Not-Call Registry for over 30 days.

71. SmartMatch did not procure Ms. Howell's or the putative class members' express written consent to place the subject telemarketing calls.

72. As SmartMatch violated the TCPA, Ms. Howell and the putative class members are each entitled to up to $500 per call placed by Defendants and up to $1,500 for each willful violation

12

of the TCPA.

73. SmartMatch's acts as described above were willful and knowing, which warrants an award of treble damages to Plaintiff and the putative class members.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Velma Juanita Howell, individually, and on behalf of all others similarly situated, requests the Court grant the following relief in her favor and against Defendant SmartMatch Insurance Agency, LLC d/b/a Medicare Rewards:

a. Enter an order against Defendant SmartMatch, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Ms. Howell as the class representative;

b. Enter an order appointing Butsch Roberts & Associates LLC and Kimmel & Silverman[4], as class counsel;

c. Enter judgment in favor of Ms. Howell and the putative class for all damages available under the TCPA, including statutory damages of up to $500 per violation, or up to $1,500 per violation if SmartMatch willfully violated Section 227(c)(5) of the TCPA or the applicable TCPA regulations;

d. Enter a judgment in favor of Ms. Howell and the putative class that enjoins SmartMatch from violating the TCPA's regulations prohibiting SmartMatch from calling numbers registered on the National Do-Not-Call Registry;

e. Award Ms. Howell and the class all expenses of this action, and requiring SmartMatch to pay the costs and expenses of class notice and administration; and,

f. Award Ms. Howell and the class such further and other relief the Court deems just

---

[4] Counsel for Kimmel & Silverman will be moving to be admitted *pro hac vice*.

and appropriate.

## JURY DEMAND

Ms. Howell hereby demands that this case be tried before a jury.

Dated: January 18, 2023

**BUTSCH ROBERTS & ASSOCIATES LLC**

*/s/ Christopher E. Roberts*
Christopher E. Roberts #61895MO
Butsch Roberts & Associates LLC
231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Telephone: (314) 863-5700
Fax: (314) 863-5711
croberts@butschroberts.com

*Attorneys for Plaintiff*